**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| EDWIN K. SLAUGHTER et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> UPONOR, INC. et al., ) <br> ) <br> Defendants. ) <br> ) | 2:08-cv-01223-RCJ-GWF <br><br> **ORDER** |

This is a class action products liability lawsuit against Defendants, who manufactured, marketed, distributed, and installed allegedly defective plumbing components, which Plaintiffs allege caused harm or are likely to cause harm to their residences in Clark County, Nevada. The Court has dismissed the case with prejudice, and Plaintiffs have appealed. One Defendant has now moved for the Court to stay similar litigation in state court pending the outcome of the appeal in this case. Several Defendants have joined the motion. For the reasons given herein, the Court denies the motion.

**I.   FACTS AND PROCEDURAL HISTORY**

On July 28, 2008, Plaintiffs Edwin K. Slaughter, Rebecca Flinn, Mel Healey, and Carol Healey filed the present class action in the District Court for Clark County, Nevada. (*See* Compl., July 28, 2008, ECF No. 1, Ex. A). Defendants Uponor, Inc.; Uponor North America, Inc.; RCR Plumbing and Mechanical, Inc. ("RCR"); Interstate Plumbing & Conditioning, LLC; United Plumbing, LLC; Ferguson Enterprises, Inc.; Hughes Water & Sewer LP; Standard Wholesale Supply Company; and HD Supply Construction Supply, LP are engaged in the

business of designing, developing, manufacturing, distributing, marketing, selling, and installing the Wirsbo PEX plumbing system, Wirsbo brass fittings, and other plumbing materials. Plaintiffs alleged that the Wirsbo brass fittings installed in certain residences throughout Clark County, Nevada were defective.  Brass is a metal alloy of copper and zinc containing a copper-to-zinc ratio from 10:1 to 1:1, and sometimes containing small amounts of other metals. "Yellow brass" has a copper-to-zinc ratio of 2:1.  Plaintiffs alleged the Wirsbo yellow brass fittings reacted with the water in Clark County in a chemical reaction known as dezincification, whereby zinc leaches out of yellow brass.  In a few cases, this caused leaks or breaks in pipes, causing water damage, and Plaintiffs anticipated more leaks or breaks would occur in the future. Plaintiffs sued in state court under the following theories of liability: (1) product liability; (2) strict liability; (3) breach of express warranty; (4) breach of implied warranty; (5) breach of warranty of merchantability; and (6) negligence.  Plaintiffs sought damages in excess of $10,000,000.  Defendants removed pursuant to the Class Action Fairness Act.

During the litigation, the Court ruled that no Plaintiff or putative class member could pursue Chapter 40 remedies under state law and also recover in the class action, because that would constitute double recovery for the same harm.  In other words, those who had pursued Chapter 40 remedies were excluded from a potential class, and any named Plaintiffs who had done so were dismissed.  Unhappy with this ruling, Plaintiffs moved to voluntarily dismiss the entire case without prejudice and withdrew their pending motion to certify the class.  The Court granted the motion in part, dismissing with prejudice.  Plaintiffs appealed that order and all previous rulings in the case.  The Ninth Circuit scheduled briefing to be completed by July 7, 2010.  Plaintiffs amended the notice of appeal three times to include appeals of the Court's denial of a motion to reconsider and its grant of attorneys fees and costs.  The Ninth Circuit has scheduled supplemental briefing to be completed by April 27, 2011.  RCR has now moved for the Court to stay a state court action, *The Gables Condominium Owners' Association v. Uponor,*

*Inc.*, No. A533498 (the "*Gables* litigation").

## II.  LEGAL STANDARDS

The All Writs Act and the Anti-Injunction Act together define the scope of a federal court's ability to enjoin state court proceedings.  "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).  However, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

## III.  ANALYSIS

RCR asks the Court to enjoin state court litigation where the uncertified putative class in the present, now-dismissed federal action is the same as a potential class in the pending state court action.  RCR is not a party to the *Gables* litigation, although it alleges to have received a subpoena duces tecum in that case.  Still, RCR is a party to the present case, and it therefore has standing to ask this Court to enjoin state court proceedings that threaten this Court's jurisdiction in the present case.

The Court has made clear that the Dismissal Order did not necessarily bar Chapter 40 claims or separate state court actions by putative class members, but that the Court would not permit any party to proceed in the federal class action who had also pursued Chapter 40 claims:

> [T]he Dismissal Order almost certainly does not prevent Chapter 40 claims by former putative class members, nor was it designed to do so.  Former putative class members will have to await a ruling in state court whether this Court's order bars a Chapter 40 (or other) action in state court.  This Court simply ruled that putative class members could not simultaneously pursue Chapter 40 remedies and join a separate class action based on the same alleged tort and thereby make Defendants defend twice against the same cause of action.  But the Court specifically stated that putative class members had the right to elect Chapter 40 remedies.  Another court will have to determine whether Chapter 40 remedies have been waived as a matter of law simply because the present, now-dismissed class action lawsuit was brought before Chapter 40 procedures were initiated—this appears to be Interstate's position

in the unrelated matter—but this Court has never ruled on that question. (Order 4 & n.1, May 18, 2010, ECF No. 415). The Court then refused Plaintiffs' request to pronounce prospectively that the Dismissal Order or the previous Preliminary Injunction Order (the "PI Order") did not have the effect of barring any future action in state court, because that issue was not ripe:

> Plaintiffs ask the Court to amend the Dismissal Order to announce that the PI Order no longer has any force or effect. Specifically, Plaintiffs ask the Court to rule that its previous ruling—that simultaneous prosecution of Chapter 40 claims and a class action based on the same alleged tort constitute duplicative actions—is a nullity in light of dismissal of the case with prejudice. Plaintiffs presumably desire such a pronouncement so that they may commence a class action in state court (or perhaps even in federal court) while simultaneously pursuing separate Chapter 40 proceedings. This Court's amendment of the Dismissal Order in the way Plaintiffs' desire could not have the effect Plaintiffs apparently seek. The efficacy of the PI Order as of dismissal of this case is a question that a future court with jurisdiction over a pending matter must decide for itself. This Court's own view on the res judicata effect of its orders has no force in another court. Plaintiffs must cite the res judicata case law to the court they wish to persuade to honor or ignore this Court's prior rulings, and that court must then determine those rulings' res judicata effect. But this Court cannot pronounce the res judicata effect of its own rulings by fiat, as if it had unlimited and preemptive appellate jurisdiction over any trial court that might consider the question in the future.
>
> Still, there is the possibility that a Defendant may in the future request this Court to stay state court proceedings initiated by a Plaintiff on the ground that such proceedings would conflict with the PI Order. Because this is a possibility, the initial inclination might be to assume that the Court must examine whether the PI Order can have any effect in light of the dismissal of the case with prejudice (Plaintiffs argue that it cannot) and amend the Dismissal Order to clarify this. However, the Court will not amend the Dismissal Order at this time, because the Court will have to examine the question only if a Defendant in this case applies for an injunction against a state court proceeding that it views to be barred by the PI Order. At that time, and not before, will the Court have the facts required to determine whether an injunction against a state court proceeding is required to protect the efficacy of the PI Order [pursuant to the Anti-Injunction Act].

(*Id.* 5:3–6:9).

The issue is now ripe. The preclusive effects of two of the Court's orders are at issue. The PI Order barred putative class members from joining the class upon eventual certification if they had pursued Chapter 40 remedies. (*See* Order 5–6, Jan. 25, 2010, ECF No. 348). Upon

certification, such class members would have to make the choice to opt out of the class if they had not yet pursued Chapter 40 remedies but wished to, and those putative class members who had already pursued Chapter 40 remedies had effectively opted out of any class action prospectively. (*See id.* at 5). The PI Order was preliminary; the Court denied a permanent injunction. (*See id.* at 6–7). The Court finds that the efficacy of the PI Order itself is not threatened by the *Gables* litigation. A preliminary injunction is a "judgment" because it is appealable. *Sierra On-Line, Inc. v. Phx. Software, Inc.*, 739 F.2d 1415, 1419 n.5 (9th Cir. 1984). Because it is an interlocutory order, however, a preliminary injunction "dissolves *ipso facto* when a final judgment is entered in the cause." *See U.S. Philips Corp. v. KBC Bank, N.V.*, 590 F.3d 1091, 1093–94 (9th Cir. 2010).

The Dismissal Order, however, is binding. As discussed at the hearing, it has two main effects. First, it precludes the certification of a class in any subsequent litigation that mirrors the putative class in the present case. Second, it precludes even individual cases or Chapter 40 actions by the named Plaintiffs in the present case. The Dismissal Order was a final judgment, and in most states, as well as under the Restatement, final judgments have preclusive effect despite an appeal. *See Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321, 329 n.7 (9th Cir. 1995) (citing *Baker v. Leary*, 261 P.2d 1013 (Nev. 1953); Restatement (Second) of Judgments § 13 & cmt. f; *id.* § 16 & cmt. a.). The Court retains jurisdiction to protect this order and will stay or dismiss state court actions in the future if the efficacy of the Dismissal Order is threatened. What the Dismissal Order did not necessarily do is prevent members of the putative, uncertified class in the present case from bringing their own separate actions in state or federal court, joining such actions, or pursuing Chapter 40 remedies. Any court in which such plaintiffs file such an action may determine this question for itself, but this Court will not enjoin such actions. The *Gables* litigation appears to fall into this category of cases, because The Gables Condominium Owners' Association is apparently the only plaintiff in that case, and there is no

1  motion for class certification or even any class allegation in that case.  If and when any plaintiff
2  in that case or another case attempts to file class allegations or certify a class, this Court may
3  enjoin such an action based on the Dismissal Order.  Unless and until this occurs, however, this
4  Court's judgments are not threatened.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Stay State Court Action (ECF No. 485) is DENIED.

IT IS FURTHER ORDERED that the Motions to Strike (ECF Nos. 501, 503) are DENIED.

IT IS SO ORDERED.

Dated this 1st day of April, 2011.

_____
ROBERT C. JONES
United States District Judge